**HUNTINGTON MORTGAGE COMPANY, Appellant,**

**v.**

**SHANKER, Appellee.**

[Cite as *Huntington Mtge. Co. v. Shanker* (1993), 92 Ohio App.3d 144.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 63706 and 64413.

Decided Sept. 13, 1993.

*Rosemary Taft Milby, Larry R. Rothenberg* and *Robert B. Weltman,* for appellant.

*Scott H. Kahn* and *Robert R. Kracht,* for appellee.

NUGENT, Judge.

This is a consolidated appeal from two cases filed in the Cuyahoga County Court of Common Pleas. Appellate case No. 63706 involves an action to collect on a cognovit note and defendant-appellee's successful motion to vacate judgment. Appellate case No. 64413 involves plaintiff-appellant's attempt to foreclose on a mortgage on property owned by appellee. Both cases were dismissed on appellee's motion due to the pendency of a similar action filed in the United States District Court for the Northern District of Ohio by defendant-appellee against plaintiff-appellant. For the reasons that follow, we dismiss case No. 63706 and reverse and remand case No. 64413.

On December 12, 1991, plaintiff, the Huntington Mortgage Company (also referred to as "HMC"), brought suit against defendant, Howard H. Shanker, for the sum of $480,000 in principal, plus interest in the amount of $16,186.70, due

and owing on a cognovit note dated December 30, 1988. This cause of action was assigned case No. 223,378 in the common pleas court. Attached to the complaint was an answer filed by plaintiff's attorney pursuant to a warrant of attorney contained within the cognovit note, confessing judgment in the amount of $496,186.70, plus interest computed on a daily basis in the amount of $166.67. Judgment was entered in said amount on December 12, 1991.

Thereafter, on May 1, 1992, defendant filed a "motion for relief from judgment; motion to vacate void judgment." Defendant argued that the Cuyahoga County Court of Common Pleas lacked subject matter jurisdiction due to the pendency of federal litigation over the same subject matter. Attached to defendant's motion was the affidavit of Howard Shanker, the general partner of the Human Services Plaza Partnership (hereinafter "HSPP"), and a co-signer of the cognovit note in question. Shanker averred that he approached the Huntington Mortgage Company seeking financing for a proposed project for the development of the Human Services Plaza building. Shanker stated that he was told if he obtained a resolution from Cuyahoga County to enter into a lease, HMC would finance the project.

The proposed project included three loans in the amounts of $600,000, $825,000 and approximately $23,500,000, see Shanker Affidavit attached to motion for relief from judgment, for the acquisition of additional real estate, relocation expenses for Shanker's family-owned business, an amount sufficient to build the Human Services Plaza building, including site-acquisition costs, hard costs and soft costs of construction, and loan for the acquisition of the property where the family-owned business was to relocate. The initial $825,000 loan was made after Shanker obtained a resolution from the county.

The $600,000 loan was also obtained by Shanker for a thirty-month period, although Shanker avers he was originally promised a one-hundred-twenty-month term. The $23,500,000 loan, however, was never obtained. HMC presented Shanker with a conditional commitment for $8 million and agreed to seek an additional $15,500,000 from other participants. However, if HMC ultimately failed to find other participants, HMC's commitment to lend would be voidable without recourse. This proposal was unacceptable to Shanker. Shanker further averred that he would not have executed the $600,000 note had the terms of the $23,500,000 loan been disclosed prior thereto. Shanker added that the $23,500,-000 loan was to be used to assist him in repaying the $600,000 note. Instead, Shanker stated he ended up with a piece of real estate, purchased with the $600,000 note, with a negative cash flow which could not support the debt which he alleges HMC induced him to incur.

As a result of the foregoing, Shanker and HSPP brought a complaint in the United States District Court for the Northern District of Ohio on May 4, 1990

against Huntington National Bank, Huntington Mortgage Company, and Huntington Company, alleging violations of Section 1972, Title 12, U.S.Code, the Bank Holding Company Act Amendments of 1970, breach of contract, fraud in inducement, estoppel and negligence. This action was styled *Human Serv. Plaza Partnership v. Huntington Natl. Bank*, case No. 1:90 CV 0811. Shanker asserted that Count II, paragraph 13, of his complaint in federal court, expressly renders the $600,000 note the subject matter of the federal litigation. Paragraph 13 reads as follows:

"Through its conduct, representations and written memoranda, defendants committed to:

"(a) loan HSPP funds sufficient to acquire the necessary land for the project;

"*(b) loan Howard Shanker funds for the purchase of real property in order to relocate his business (hereinafter 'E. 18th Street Loan'*);

"(c) loan Twenty-four Million Dollars ($24,000,000.00) necessary to complete the overall project." (Emphasis in plaintiff's motion.)

During the pendency of the federal litigation, the parties exchanged correspondence regarding the $600,000 cognovit note. In one correspondence, HMC notified Shanker that the note was to mature on June 30, 1991 and that it was expecting payment in full at that time. Shanker, in return, requested an explanation as to how the balance claimed to be due was determined and, in particular, how HMC calculated the interest allegedly due on the $600,000 note. After several correspondences concerning the calculation of interest on the $600,000 note, counsel for the Huntington entities wrote to Shanker's counsel:

"I am in receipt of a copy of correspondence addressed from Howard Shanker to Mr. Frank Wobst date August 7, 1991. As you are aware, the matters raised in Mr. Shanker's correspondence are the subject of continuing litigation between your client and various subsidiaries of Huntington Bancshares, Inc. Therefore, while Huntington Bancshares, Inc. and its subsidiaries dispute the allegations contained in the August 7 letter, no response to Mr. Shanker's August 7 letter will be forthcoming. Please advise your client accordingly."

During the course of discussions concerning the calculation of the interest rate on the $600,000 loan, the Huntington entities filed a motion for summary judgment in the federal litigation on the grounds that Shanker and HSPP failed to state claims against the Huntington entities under the Bank Holding Company Act. While said motion was pending, Shanker and HSPP filed a motion for temporary restraining order ("TRO"), seeking an injunction against the Huntington entities from filing suit and taking judgment on the $600,000 note.

Judge Aldrich denied the motion for TRO. At the hearing on said motion held on July 8, 1991, the following exchange took place between the court and counsel

for Huntington with respect to the motion for summary judgment on the federal questions presented and the pendent state questions remaining:

"THE COURT: * * * In other words, if I would rule—I will put it this way, if I would rule with the bank and say there is no Federal question here, then you are going to be back in State Court, and you are going to be litigating this issue as far as I can see.

"And if I would go the Plaintiff's way with the Federal question, then we will be in this Court litigating the pendent State.

" * * *

"THE COURT: By denying the motion to restraining order [*sic* ], the bank is free to go out and try to collect on this loan tomorrow and then State Court tomorrow.

"MR. MARKUS: We may be there.

"THE COURT: You may do that and the Plaintiff is going to put in all of these defenses that would be part of this case, so it seems to me, one of the rare cases in which I might be inclined to say, I will order discovery and spare me and my Magistrate having to go through all of this and try to rule on this one Federal issue assuming that if the bank has a result of denying your motion for temporary restraining order, Mr. Kahn, they go right out and file State Court to collect on this note. You can present all of those questions in the State Court and let the State Court deal with your discovery disputes.

"MR. KAHN: I might be subject to inconsistent rulings if this Court keeps jurisdiction over the tying case.

"THE COURT: Only until I can decide the tying question. Then you can go forward on the merits, if I go your way on the tying question.

"What I'm saying is in a sense you are getting some protection in that the bank may not want to go forward in State Court, if they think there is a possibility that they will go forward in this Court rather than the State Court, I don't know. I have no idea what their tactics may be."

Thereafter, on August 6, 1991, Judge Aldrich denied the Huntington entities' motion for summary judgment. Nothing further appears in this court's record with respect to the federal litigation.

HMC filed a responsive brief to Shanker's motion for relief from judgment, arguing that the district court never exercised its pendant jurisdiction over the state law claims and, therefore, HMC was free to collect the balance owing on the $600,000 cognovit note. However, HMC did not attach any evidentiary materials to its brief in opposition.

Based on the foregoing and relying on the authority of *John Weenink & Sons Co. v. Court of Common Pleas of Cuyahoga Cty.* (1948), 150 Ohio St. 349, 38 O.O. 189, 82 N.E.2d 730; *Michaels Bldg. Co. v. Cardinal Fed. S. & L. Bank* (1988), 54 Ohio App.3d 180, 561 N.E.2d 1015; and *United Mine Workers of Am. v. Gibbs* (1966), 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218, the trial court granted Shanker's motion to vacate on May 1, 1992. A timely notice of appeal was filed with the trial court on May 12, 1992. The cause was assigned appellate case No. 63706.

Thereafter, on May 18, 1992, the Huntington National Bank (also referred to as "HNB") brought suit against Howard H. Shanker, Carol Rapisarda Shanker, and L & M Properties Company, seeking to foreclose on certain property owned by defendants and upon which plaintiff, pursuant to an assignment from HMC, owned a duly filed mortgage. Said mortgage was executed and delivered to secure the $600,000 promissory note which was the subject of the case previously filed in the common pleas court. This cause of action was assigned case No. CV–232290. Without filing an answer, Howard and Carol Shanker filed a motion to dismiss based on the argument that the trial court lacked subject matter jurisdiction due to the pending action in the United States District Court for the Northern District of Ohio entitled *Human Serv. Plaza Partnership v. Huntington Natl. Bank et al.*, Hearing case No. 1:90 CV 0811. The Shankers further argued that the common pleas case should be dismissed pursuant to Civ.R. 12(B)(6) by application of the doctrine of *res judicata* and collateral estoppel based on their successful motion to vacate judgment filed in common pleas case No. CV–223378. The record further reveals that L & M Properties Company had been granted at least two leaves of court to move or otherwise plead to the complaint, and one other such motion had been filed but not ruled upon. Thereafter, on September 4, 1992, the trial court granted the Shankers' motion to dismiss without opinion.[1] A timely notice of appeal was filed on September 22, 1992. This cause was assigned appellate case No. 64413.

On appeal, the two common pleas cases were consolidated for hearing and disposition. During the pendency of this appeal, appellant, HMC, filed a motion to substitute HNB as party plaintiff-appellant in appellate case No. 63706 pursuant to App.R. 29(B), for the reason that HNB is the holder of the note to be collected. HNB was assigned the note in question on December 30, 1988 by HMC. In response, appellee Shanker filed a responsive brief in opposition and a

---

1. Because HNB's entire claim was for foreclosure on the property in question, we hold the trial court's entry dismissing HNB's complaint constitutes a final appealable order notwithstanding L & M Properties Company's failure to move or otherwise plead. The trial court's order disposes of all claims with respect to the foreclosure action, since the trial court, in essence, refused to determine the parties' interest in the property in question.

motion to dismiss HMC's appeal on the grounds that HMC by its own admission lacked standing to maintain the underlying action in either the trial court or on appeal. Subsequently, this court overruled HMC's motion to substitute parties. We now grant appellee Shanker's motion to dismiss.

"[I]t is well established in Ohio that an appeal lies only on behalf of a party aggrieved. Such party must be able to show that he has a present interest in the subject matter of the litigation and that he has been prejudiced by the judgment of the lower court." *In re Guardianship of Love* (1969), 19 Ohio St.2d 111, 113, 48 O.O.2d 107, 109, 249 N.E.2d 794, 795; see, also, *Ohio Savings Bank v. Ambrose* (1990), 56 Ohio St.3d 53, 56, 563 N.E.2d 1388, 1390, fn. 3. In the present case, pursuant to its own admission, HMC assigned its interest in the cognovit note to HNB on December 30, 1988. Nearly three years later, HMC brought the present action seeking to collect on the relevant cognovit note. Finally, it was not until June 8, 1992, over four years after the pertinent assignment, that HMC moved to substitute parties. This court denied HMC's motion. Clearly, HMC is without a present interest in the subject matter of the litigation and has not been prejudiced by the lower court's ruling. HMC cites *Akron Ambulance Serv., Inc. v. Cox* (1956), 101 Ohio App. 421, 1 O.O.2d 340, 140 N.E.2d 7, and *Early v. Leatherman* (1955), 100 Ohio App. 448, 60 O.O. 358, 137 N.E.2d 287, for the proposition that Ohio law allows a buyer to continue a court of appeals case originally brought in the name of the seller. However, *Cox* and *Early* are distinguishable from the present case. In *Cox* and *Early,* substitution of parties was permitted, since the transfer of interest in the subject matter of the litigation was made during the pendency of the suit or during the appeal. Indeed, the Ohio Supreme Court recognized, in *Cullen & Vaughn Co. v. Bender Co.* (1930), 122 Ohio St. 82, 170 N.E. 633, paragraph five of the syllabus:

"The assignment by a plaintiff of his interest in a controversy made during the pendency of a suit to recover is not a defense to the action, but the cause may proceed in the name of such plaintiff."

In the present case, the assignment of the subject matter of the litigation was made nearly three years prior to the commencement of this action and not during its pendency. HMC was never the real party in interest, and a motion to substitute parties has been previously denied by this court. Consequently, HMC does not have standing to pursue this appeal. Case No. 63706 is, therefore, dismissed.

Appellant HNB raises the following sole assignment of error in case No. 64413:

"The trial court erroneously granted the defendant-appellee's motion to dismiss the foreclosure action filed by plaintiff-appellant, because federal law allows state

court jurisdiction to obtain over this clearly state law claim, and state law mandates that the trial court take jurisdiction."

■ Appellant HNB argues the trial court improperly dismissed its foreclosure action based on the rationale that the federal court had proper jurisdiction over the subject matter of the controversy. It is not contested that the Common Pleas Court of Cuyahoga County would ordinarily have subject matter jurisdiction over the instant foreclosure action. See R.C. 2305.01. Appellant HNB argues that federal case law as well as state case law allows the matters presented in the foreclosure action to be litigated simultaneously with those issues presented in the federal litigation. Appellant HNB's contentions are well taken.

In *Efros v. Nationwide Corp.* (1984), 12 Ohio St.3d 191, 12 OBR 257, 465 N.E.2d 1309, the Ohio Supreme Court was presented with a procedural situation similar to the issue presented *sub judice.* There, the question was "whether an action, filed in a state court, is subject to dismissal due to the pendency of a similar action between the same parties in federal court." *Id.* at 192, 12 OBR at 258, 465 N.E.2d at 1310. Plaintiffs therein brought an action in federal court, alleging various violations of federal securities laws as well as a state law claim for breach of fiduciary and other common-law duties. Thereafter, plaintiffs filed a second complaint in state court, alleging the same violations of fiduciary and other common-law duties. Upon motion, the common pleas court dismissed plaintiffs' complaint. The court of appeals reversed and remanded, holding the dismissal of the state court action was not required under *State ex rel. Phillips v. Polcar* (1977), 50 Ohio St.2d 279, 4 O.O.3d 445, 364 N.E.2d 33. The Supreme Court affirmed the court of appeals, but on a different basis, holding that the "priority principle," as espoused in *Phillips,* did not apply where the same action is brought in both a state court and a federal court. Instead, the court adopted the "federal rule":

"The so-called federal rule provides that where the action is strictly *in personam* (as here), and where both courts have concurrent jurisdiction, both the federal and state courts may proceed concurrently with the litigation, at least until judgment is obtained in one of them which may be raised as *res judicata* as to the other. See *Princess Lida v. Thompson* (1939), 305 U.S. 456, 466 [59 S.Ct. 275, 280–281, 83 L.Ed. 285, 291]. The rationale supporting this rule is that federal and state courts are separate and distinct jurisdictional sovereignties and are thus analogous to courts of different states. See *Kline v. Burke Constr. Co.* (1922), 260 U.S. 226 [43 S.Ct. 79, 67 L.Ed. 226]."

The United States Supreme Court, in *Princess Lida, supra,* 305 U.S. at 465–467, 59 S.Ct. at 280–281, 83 L.Ed. at 291, explained the concept of concurrent jurisdiction further:

"Certain it is, therefore, that if both courts were to proceed they would be required to cover the same ground. This of itself is not conclusive of the question of the District Court's jurisdiction, for it is settled that where the judgment sought is strictly in personam, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other. *On the other hand, if the two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other. We have said that the principle applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property.* The doctrine is necessary to the harmonious cooperation of federal and state tribunals. While it has no application to a case in a federal court based upon diversity of citizenship, wherein the plaintiff seeks merely an adjudication of his right or his interest as a basis of a claim against a fund in the possession of a state court, this is not such a case. No question is presented in the federal court as to the right of any person to participate in the res or as to the quantum of his interest in it. The contentions are solely as to administration and restoration of corpus." (Citations omitted and emphasis added.)

■ See, also, *Penn Gen. Cas. Co. v. Pennsylvania* (1935), 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850. Where the two suits have substantially the same purpose and it can be said that neither court can act effectively without acquiring possession and control of the property, the court whose jurisdiction and process are first invoked by the filing of the complaint is treated as in constructive possession of the property and is authorized to proceed with the cause. *Id.* at 196,

■ The foreclosure of real property is governed by R.C. 2323.07. A foreclosure of real property allows the court of common pleas to order the sale of said property and to prioritize any and all liens asserted against said property. See *Gaul v. Leeper* (July 15, 1993), Cuyahoga App. No. 63222, unreported, 1993 WL 266818; *Culkar v. Fanter* (Dec. 27, 1984), Cuyahoga App. No. 48151, unreported, 1984 WL 6394. As such, a foreclosure action is a *quasi in rem* proceeding and invokes the court's *quasi in rem* jurisdiction. See *Freeman v.*

*Alderson* (1886), 119 U.S. 185, 7 S.Ct. 165, 30 L.Ed. 372; and *Pennoyer v. Neff* (1877), 95 U.S. 714, 24 L.Ed. 565.

In contradistinction, Shanker's claims against HNB filed in the federal court assert violations of the Bank Holding Company Act, breach of contract, fraud, estoppel and negligence. As such, the proceedings before the federal court are *in personam* in nature. There is no question presented to the federal court as to the right of any person to control the property in question. *Princess Lida,* *supra.* Moreover, to the extent that Shanker seeks to litigate state claims in federal court, Shanker seeks to invoke the federal court's pendent jurisdiction to hear said state claims.

Pendent jurisdiction "exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority * * *,' * * * and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the [federal] court. * * * The state and federal claims must derive from a common nucleus of operative fact." (Citations omitted.) *United Mine Workers of Am. v. Gibbs* (1966), 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218, 228; see, also, Section 1367, Title 28, U.S.Code. However, "[i]t has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Id.,* 383 U.S. at 726, 86 S.Ct. at 1139, 16 L.Ed.2d at 228. Moreover, "the issue whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation." *Id.* at 727, 86 S.Ct. at 1139, 16 L.Ed.2d at 229.

In the present case, it does not appear that the two actions can be said "to have substantially the same purpose." Additionally, there is nothing in the record to indicate that the federal court cannot act effectively without first acquiring possession and control of the subject property. Finally, there is nothing in the record to indicate that the federal court has exercised its discretion and accepted pendent jurisdiction over the state law claims asserted by Shanker in his complaint before that court. To the contrary, the record before this court indicates that the federal court has yet to exercise such pendent jurisdiction. Although the federal court indicated, at the hearing on Shanker's motion for a temporary restraining order, that it would likely exercise its pendent jurisdiction to hear the state law claims should it overrule HNB's motion for summary judgment on the federal claims, the record before this court does not demonstrate that it has yet done so. Rather, the federal court declined to issue a TRO enjoining HNB from asserting its own state claims. Accordingly, the common

pleas court below is the court which first assumed jurisdiction of the subject property in question. The common pleas court, therefore, committed prejudicial error in dismissing HNB's complaint for foreclosure.

■ Should the federal court determine to exercise its discretion and assume pendent jurisdiction over Shanker's state law claims, the federal court may enjoin the state court proceedings if necessary in aid of its jurisdiction or to protect or effectuate its judgments. See Section 2283, Title 28, U.S.Code.[2]

■ Finally, we note that Shanker's reliance on this court's decision in *Michaels Bldg. Co. v. Cardinal Fed. S. & L. Bank* (1988), 54 Ohio App.3d 180, 561 N.E.2d 1015, is misplaced. *Michaels Bldg.* involved a situation where the same action was filed in two different state courts. The Ohio Supreme Court, however, made clear that the federal rule would apply to actions pending concurrently in federal and state court. *Efros, supra.* Moreover, *John Weenink & Sons Co., supra,* holds that once a court acquires jurisdiction over a cause, its authority continues until the matter is completely and finally disposed of, and no court of coordinate jurisdiction is at liberty to interfere with its proceedings. The trial courts below failed to dispose of the matters in question.

Appellant HNB's sole assignment of error has merit, and appellate case No. 64413 is reversed and remanded for further proceedings consistent with this opinion. Appellate case No. 63706 is dismissed.

*Judgment accordingly.*

JOHN F. CORRIGAN, P.J., and JAMES D. SWEENEY, J., concur.

---

**2.** Section 2283 provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."