[Cite as *Weese v. Dalton*, 2026-Ohio-537.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| WILLIAM WEESE, | Case No. 25 CA 000012 |
| Plaintiff - Appellant | <u>Opinion & Judgment Entry</u> |
| -vs- | Appeal from the Court of Common Pleas of Guernsey County, Case No. 21CV000242 |
| CHARLES W. DALTON III, et al., | |
| Defendants - Appellees | Judgment: Affirmed in Part, Reversed in Part, and Remanded |
| | Date of Judgment:  February 13, 2026 |

BEFORE: William B. Hoffman; Andrew J. King; David M. Gormley, Judges

APPEARANCES: Brian W. Benbow, Zanesville, Ohio, for Plaintiff-Appellant William Weese; Ryan A. McCarthy and Jesse W. Moses (Legal Aid of Southeast and Central Ohio), New Philadelphia, Ohio, for Defendant-Appellee Christina Dalton; Matthew C. Carlisle (Theisen Brock), Marietta, Ohio, for Defendant-Appellee Larry Lang.


*Gormley, J.*

{¶1}     Plaintiff William Weese argues in this appeal that the trial court erred by finding that the homestead exemption in R.C. 2329.66 bars Weese's attempt to foreclosure on a home owned by Christina Dalton.  A forced sale of that home should take place, Weese argues, with a portion of the sale proceeds being applied to satisfy a judgment owed to him by Christina's late husband Charles Dalton.  Weese also claims that Charles Dalton committed fraud in his dealings with Weese, and Weese faults the trial court for not embracing that argument.

{¶2}     In large part, we agree with the trial court.  We find that Weese cannot raise his fraud claim against Charles Dalton in this case, and so we affirm the trial court's

judgment rejecting that claim. We also agree with the trial court's finding that Weese's lien against the Dalton property is valid, and we agree, too, with the trial court's conclusion that Christina Dalton can assert the statutory homestead exemption in response to Weese's foreclosure efforts. We part ways with the trial court, though, in its conclusion that the entire value of Christina's home is exempt from foreclosure, so we reverse on that portion of the judgment and remand the case to the trial court for further proceedings there.

**The Key Facts**

**{¶3}** We heard an appeal in this same case in 2023 after the trial court, in response to Weese's efforts then to foreclose on the Dalton property, granted summary judgment in favor of defendant Christina Dalton. In that earlier appeal, we ruled in Weese's favor, finding that genuine factual disputes precluded summary judgment at that point. *See Weese v. Dalton*, 2023-Ohio-3905, ¶ 38 (5th Dist.). The case then returned to the trial court, which held a bench trial last year and found that Weese's foreclosure effort is blocked for now by the homestead exemption.

**{¶4}** The parties have been at odds in multiple courts for several years, and their disputes focus not only on the property at issue in this foreclosure case but also on two home-improvement projects gone awry.

**{¶5}** Defendant Charles Dalton, who passed away in January 2020, was a homebuilder and home remodeler. Charles and his wife Christina Dalton — who is also the mother of Charles Dalton's children — each owned a one-half interest in a parcel of real residential property in Guernsey County that they acquired together in 2008.

According to her testimony at trial, Christina Dalton presently owns the home on that property and resides in it with her daughter.

{¶6} In 2017, Charles had agreed to perform various home-renovation tasks for William Weese at Weese's home in Coshocton County. As that project progressed, Weese felt that Charles's performance was inadequate, and Weese soon thereafter filed suit against Charles in Coshocton County. Included in Weese's complaint against Charles was a fraud claim and a request for punitive damages and attorney's fees.

{¶7} After Weese's Coshocton County complaint against Charles had been properly served in 2017, Charles failed to answer. Weese then moved for a default judgment. The trial judge in Coshocton County granted Weese's request in March 2018, though the trial judge's order granting judgment in Weese's favor rejected Weese's fraud allegation against Charles and simply awarded a monetary judgment for the actual breach-of-contract damages sought by Weese, which totaled nearly $88,000.

{¶8} Weese did not appeal. Several months later, Weese filed a certificate of judgment against Charles in Guernsey County, where Charles and Christina owned the home in which Christina still lives

{¶9} Meanwhile, defendant Larry Lang sued Charles in Washington County, alleging that Charles had failed to perform some promised home-improvement work at Lang's property in that county. The trial court in that case granted judgment in Lang's favor in January 2018 and awarded him more than $22,000 in damages against Charles.

{¶10} The following month, Lang filed a certificate of judgment against Charles in Guernsey County. Then in May 2018 — several months before Weese filed his certificate

of judgment in Guernsey County — Lang filed a foreclosure case against Charles and others in that county.

**{¶11}** Lang obtained a judgment against Charles in Lang's foreclosure case the following year. Before any forced sale of the home took place, though, Charles raised the R.C. 2329.66 homestead exemption as a reason why no sale should occur. The Guernsey County trial court in that case agreed with Charles and found in October 2019 that his home could not at that point be sold at auction because of the homestead exemption.

**{¶12}** Soon thereafter, Charles died without having signed a will.

**{¶13}** Next, Weese filed a foreclosure case — the case now before us — in Guernsey County seeking to collect on his Coshocton County judgment against Charles. Named as defendants in the case were Charles (who was already deceased at that point), Christina, and Lang (presumably because Lang's certificate of judgment against Charles remained unsatisfied).

**{¶14}** At the bench trial in the case last year, the trial court determined that Weese holds a valid judgment against Charles's former one-half interest in the Guernsey County home where Charles's widow Christina still lives, but that home is exempt from foreclosure, the trial court concluded, because of Ohio's statutory homestead exemption in R.C. 2329.66

**{¶15}** Weese now appeals.

## The Doctrine of Claim Preclusion Bars Weese From Relitigating His Fraud Claim

**{¶16}** Weese's first and third assignments of error focus on his view that Charles Dalton committed fraud when performing home-improvement work for Weese in

Coshocton County in 2017. That commission of fraud by Charles, according to Weese, now bars Christina from asserting the homestead exemption in Weese's Guernsey County foreclosure case. In our view, Weese's opportunity to pursue his fraud claim came and went years ago.

{¶17} The doctrine of res judicata or claim preclusion provides that "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379 (1995), paragraph one of the syllabus. Under the claim-preclusion doctrine, a final judgment between parties to litigation is "conclusive as to all claims which were or might have been litigated in a first lawsuit." *Rogers v. Whitehall*, 25 Ohio St.3d 67, 69 (1986).

{¶18} Claim preclusion is marked by four key elements: "'(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.'" *Lycan v. Cleveland*, 2022-Ohio-4676, ¶ 23, quoting *Hapgood v. Warren*, 127 F.3d 490, 493 (6th Cir. 1997).

{¶19} The first required element — whether the trial court in Coshocton County in 2018 issued a final and valid decision on the merits of Weese's fraud allegation against Charles Dalton — is met in this case. Weese sued Charles in Coshocton County in 2017 for both breach of contract and fraud. The trial court in that case granted Weese's motion for a default judgment against Charles. In doing so, though, the trial judge used a

proposed final judgment entry prepared by Weese's counsel and — before signing it — struck out with a pen some language in Weese's proposed entry that alleged that "the averments in the Complaint" were "true" and that Charles owed not just actual damages of just under $88,000 for breach of contract but also "punitive damages" totaling "$263,983.98" for Charles's "intentional fraud" as well as "attorney's fees" of "$2,500" for Charles's "bad faith."

{¶20} That deliberate action on the part of the Coshocton County trial judge of striking out all of those words and numbers indicates to us that the judge in that case did not want that default judgment to be viewed as a finding that Weese had proven a fraud claim, and in fact we view the final entry with its evident strikethroughs as an indication that the court in Coshocton County had adjudicated Weese's fraud allegation in a manner adverse to Weese. And then, importantly, Weese did not appeal from that judgment.

{¶21} But can a default judgment be given preclusive effect, and can it be viewed as a final decision on the merits of a claim? Multiple court rulings say that it can. *See, e.g., Duncan v. U.S. Bank, NA*, 574 Fed. Appx. 599, 602 (6th Cir. 2014) ("Ohio law recognizes that a default judgment is a valid and final judgment on the merits"); "); *Martel v. Am. Family Ins. Co.*, 2012-Ohio-1486, ¶ 45 (5th Dist.) ("[e]ven in default, a trial court is required to consider the issues[,] and therefore a determination on such is a decision on the merits"); *Stand Energy Corp. v. Ruyan*, 2005-Ohio-4846, ¶ 11 (1st Dist.) ("A default judgment is a valid and final judgment upon the merits, and it can be, therefore, a proper bar to later claims for purposes of claim preclusion.").

{¶22} A trial court that issues a bare-bones default-judgment entry that does not mention the factual allegations raised in the complaint, though, cannot be presumed to

have addressed the merits of the plaintiff's claims. *See Woods v. Progressive Direct Ins. Co.*, 2018-Ohio-1867, ¶ 32 (6th Dist.) (explaining that "a default judgment generally does not determine legal issues for purposes of res judicata," but noting that "[a]n exception can be made . . . where a default judgment contains express findings and legal conclusions"); *Zaperach v. Beaver*, 6 Ohio App.3d 17, 19 (10th Dist. 1982) ("Only if there is an express adjudication of an issue by the court in the original action, whether by default or trial, can the judgment in that action be utilized as establishing a matter as between the parties.").

{¶23} The Sixth Circuit's Bankruptcy Appellate Panel has put the matter succinctly this way:

> [T]he court being asked to give preclusive effect to a default judgment in a subsequent litigation must have some reliable way of knowing that the decision was made on the merits. The best evidence would be findings of fact and conclusions of law by the court entering the default judgment. These need not be entered in any special or formal way, but the default court must state what findings and conclusions, if any, it has reached in arriving at the judgment. Those findings and conclusions will have preclusive effect.

*In re Sweeney*, 276 B.R. 186, 194 (6th Cir. B.A.P. 2002).

{¶24} The Coshocton County trial court's default-judgment order — containing, as it does, not only the judge's approval of Weese's request for nearly $88,000 in actual damages for Charles Dalton's alleged breach of contract but also the judge's strikethroughs of four full paragraphs and one additional phrase tied to Weese's fraud claim, followed by the judge's signature — reflects, we believe, that court's findings and conclusions about the issues in both the final approved language and in the stricken provisions.

{¶25} Had Weese's proposed final judgment entry not contained the words "intentional fraud," "bad faith," and the other language that we noted above, and had the Coshocton Country trial judge simply signed a clean entry granting a default judgment to Weese for his actual breach-of-contract damages without addressing the fraud claim, we would be hesitant to give the default judgment in that case any preclusive effect on Weese's fraud allegation that he raises again in the case now before us. But the entry as signed by the Coshocton County judge — whose strikethroughs of the words and numbers that we quoted in paragraph 19 above are there for the world to see on two of the three pages of Weese's proposed judgment entry — does, we believe, reflect that court's findings and conclusions on Weese's fraud claim.

{¶26} Weese, whose own counsel had drafted the proposed entry for the Coshocton County judge and who no doubt very much wanted the judge to make express findings in that case about Charles having committed what Weese's proposed entry described as "intentional fraud," had a choice to make once he read the judge's entry and saw that the judge had rejected the fraud allegation in that case. His choice, of course, was whether to appeal or not. He chose not to appeal, and we now view the Coshocton County court's default judgment as a final decision on the merits of Weese's fraud claim.

{¶27} The second claim-preclusion element identified in the Supreme Court's four-part *Lycan* framework that we quoted above in paragraph 18 of this opinion focuses on whether the two actions — that is, the earlier case and the current one — involved the same parties or their privies. Weese is in fact the plaintiff in this case, just as he was in the 2017 Coshocton County case that resulted in the default judgment against Charles Dalton. Charles, in turn, was a named defendant in both cases, and Christina Dalton

today stands as Charles's privy in this case, arguing that Weese cannot raise a fraud claim against her late husband now. And, of course, Christina received — under Ohio's statute of descent and distribution in R.C. 2105.06(B) — Charles's one-half interest in the property at issue in this foreclosure case. *Seifert Technologies, Inc. v. CTI Engineers, Inc.*, 2010-Ohio-5917, ¶ 35 (5th Dist.) (privity exists "when a person succeed[s] to the interest of a party").

{¶28} Under the third *Lycan* factor, we look to see whether the second action — this case — raises claims that were or could have been litigated in the first action. In this action seeking a sale of the Daltons' home to satisfy his lien, Weese argues that Charles Dalton's fraud in 2017 should preclude Christina Dalton from asserting the homestead exemption now. In the first action — the 2017 Coshocton County lawsuit — Weese asserted a claim of fraud against Charles Dalton based on Charles's performance of home-renovation work that Charles had agreed to undertake at Weese's home in Coshocton County. In granting Weese's motion for a default judgment against Charles, the court in Coshocton County — as evidenced by that court's strikethroughs on Weese's proposed judgment entry — appears to have addressed and rejected Weese's fraud claim. Because Weese is now attempting to relitigate his fraud claim in this case, we find that the third element of claim preclusion is met.

{¶29} The last *Lycan* factor focuses on whether the second action arose out of the same transaction or occurrence as the previous action. Weese in the 2017 Coshocton County lawsuit sought recovery for damages he claims to have sustained from Charles Dalton's alleged failure to adequately perform construction work under the terms of a contract, and Weese was awarded a default judgment against Charles in that case.

Weese used that judgment to obtain a lien against Charles in Guernsey County. Now in this lawsuit — the second action — Weese is attempting to foreclose on the Daltons' property to satisfy the judgment lien from the first action. And Weese again in this case raises arguments related to Charles Dalton's alleged fraud in the performance of the Coshocton County home-renovation contract. The two lawsuits, therefore, share the same "common nucleus of operative facts," and the final claim-preclusion element is met. *See U.S. Bank Trust, N.A. v. Watson*, 2020-Ohio-3412, ¶ 23 (3d Dist.), quoting *Grava*, 73 Ohio St.3d at 382 ("For purposes of claim preclusion, a 'transaction' has been defined as a 'common nucleus of operative facts.'").

**{¶30}** Because all of the claim-preclusion elements are met, we find that Weese is barred from relitigating his fraud claim against Charles Dalton in this case. Weese had the opportunity to litigate Charles's alleged fraud in 2017 and 2018 when he filed his lawsuit in Coshocton County. The trial judge in that case issued a valid and final judgment on the merits, and in that decision, the court rejected Weese's fraud claim. Weese could have appealed that ruling, but he cannot relitigate the claim in this case. *See Schooler v. Combs*, 2024-Ohio-2111, ¶ 13 (12th Dist.) ("Any issue that could have been raised on direct appeal and was not is res judicata and is not subject to review in subsequent proceedings.").

**{¶31}** Weese's first and third assignments of error are overruled.

## Christina Dalton May Assert the Homestead Exemption, Though That Exemption Does Not Bar a Forced Sale of Her Home

**{¶32}** Weese argues in his second assignment of error that Christina Dalton is not entitled to benefit from Ohio's homestead exemption.

**{¶33}** R.C. 2329.66(A)(1)(b) allows every person who is domiciled in this state to hold exempt from a sale to satisfy a judgment "the person's interest, not to exceed one hundred twenty-five thousand dollars, in one parcel or item of real or personal property that the person or a dependent of the person uses as a residence." (R.C. 2329.66(B) directs the Ohio Judicial Conference to periodically adjust the exemptions in that statute to reflect any increases in the consumer price index. According to a document posted on the Judicial Conference's website at https://www.ohiojudges.org/Resources/publications (accessed Feb. 9, 2026), the $125,000 exemption amount for a parcel of real estate used as a residence by a debtor is, when adjusted for inflation, now $182,625.)

**{¶34}** Christina testified at the trial that both she and her dependent daughter still live in the house that Weese is hoping will be sold at auction to satisfy his judgment lien. According to a real-estate appraisal filed with the trial court in November 2024, the real estate has a value of $189,000. Weese's Coshocton County judgment, in turn, totals $87,994.66, plus annual interest of three percent.

**{¶35}** Nothing in the record before us casts doubt on the trial court's finding that Weese's lien on the property is a valid one. We also see no error, either, in the trial court's conclusion that Christina Dalton can invoke the homestead exemption and so would be entitled to receive the full R.C. 2329.66(A)(1)(b) exemption amount — $182,625 in today's dollars, minus any taxes or other debts that she might owe or that her late husband owed to the State of Ohio or to any of its political subdivisions — if the home were sold to satisfy Weese's lien or any other lien on the property. *See* R.C. 2329.66(D)(2) (indicating that a person's "interest" in exempt property is determined "as of the date of an appraisal" or on the date when a writ of execution is issued); R.C. 2329.66(D) and R.C. 2329.661(A)(4)

(explaining that a person's "interest" in property does not include the amount of any lien on the property "for the payment of taxes, debts, or other obligations owed to this state or any agency or political subdivision of this state").

**{¶36}** Weese's assignment of error asking us to find that Christina Dalton cannot assert the R.C. 2329.66(A)(1)(b) homestead exemption is overruled.

**{¶37}** We believe that the trial court did err, though, when it found that the homestead exemption bars Weese's efforts to foreclose on the Dalton property. As we explained above, Christina would be entitled to receive nearly all of the likely proceeds from an auction of her $189,000 property, but we see nothing in the homestead-exemption statute that bars Weese (or any other creditor) from pressing ahead with a forced sale of the home to collect at least a portion of the damages owed by Charles Dalton to his creditors.

**{¶38}** If a judgment of foreclosure were issued in this case, and if an auction then failed to generate any bids exceeding the amount of Christina's exempt interest in the property, then no sale could go forward, in which case Christina could remain in the home. Her exempt interest in the property does not exceed the home's appraised value, though, so Weese is entitled to pursue his foreclosure claim in the trial court if he wishes to do so.

**A Word About Judge King's Concurrence**

**{¶39}** In Judge King's concurring opinion that follows, he suggests that the trial court on remand should consider whether Weese, by failing to present a claim against the unopened estate of Charles Dalton for the amount of the judgment owed, has forfeited his ability to foreclose on his lien. Mindful that this question was not addressed by the trial court and has not been briefed by the parties here, we hesitate to express any

definitive view about it. We mention the issue simply to note that we have serious doubts about the merits of Judge King's suggestion that Weese should have initiated some sort of legal proceeding against Charles's estate (or should have taken steps to see that the local probate court appointed an estate administrator and then should have initiated a suit against that administrator) for the judgment owed by Charles to Weese, and we would not want the trial court on remand to assume that Judge King's perspective is necessarily the view of our court as a whole.

{¶40} Judge King points to R.C. 2117.06 — the provision that calls for any creditor having a claim against an estate to present that claim within six months after the decedent's death — as support for what appears to be Judge King's view that Weese has lost any opportunity to pursue his foreclosure case because Weese did not present a claim to Charles Dalton's estate within that six-month window in the early months of 2020.

{¶41} We question, though, whether that provision applies, given that Charles Dalton's half-interest in the Dalton real estate passed not to his estate but instead, under R.C. 2105.06(B), to his widow Christina. *See Fonce v. Kabinier*, 2023-Ohio-4027, ¶ 21 (11th Dist.) ("title to real property vests immediately upon death in the heirs"); *Kirshner v. Fannie Mae*, 2012-Ohio-286, ¶ 15 (6th Dist.) ("lands of an intestate descend at once to the intestate's heirs"); *Brandon v. Keaton*, 90 Ohio App.3d 542, 544 (2d Dist. 1993) ("real property descends to the heirs at the time of death").

{¶42} By pursuing a foreclosure case against that real property, Dalton is not seeking to initiate a claim against Charles's estate but is instead seeking to enforce an existing judgment against the property to which Weese had, under R.C. 2329.02, properly attached a lien while Charles was still alive. *See Deutsche Bank Natl. Trust Co. v. Vigue*,

2017-Ohio-7037, ¶ 10 (10th Dist.) ("a claim in foreclosure is against the property"); *id.* ("foreclosure is not an available remedy against an estate in personam under R.C. 2117.06"); *James B. Nutter & Co. v. Phillips*, 2013-Ohio-184, ¶ 7 (2d Dist.) ("Nutter was not required to name Phillips's estate as a party because the estate had no interest in the foreclosure action. The estate did not own Phillips's former home, which was transferred to Elizabeth Williams by survivorship and Nutter did not seek to hold the estate liable for the debt under the note"); *Weaver v. Bank of New York Mellon*, 2012-Ohio-4373, ¶ 22 (10th Dist.) ("a foreclosure claim is not characterized as a claim against an estate, but rather as a claim in the nature of an in rem proceeding to reach the mortgaged property to satisfy a debt"); *id.* ("foreclosure is a remedy independent of those provided for in the probate court," and "R.C. 2117.06 does not preclude" a creditor's right to bring "an action in foreclosure").

**{¶43}** Indeed, the principal case on which Judge King relies does not appear to support his view that Weese, by failing to present a claim against Charles Dalton's estate, is precluded from enforcing his lien through a foreclosure case against the Dalton property. *See Ambrose v. Byrne*, 61 Ohio St. 146, 159–160 (1899) ("pleading the lien, . . . in order that it might receive its proper share of the proceeds of the land on which it was charged, is not the commencement of an action against the executor within the purview of the statute which limits the time for bringing actions against executors and administrators").

**{¶44}** And the court in that case noted that a "lien holder has the right to expect and may accordingly rely on the security of his lien as it existed at the time of his debtor's decease." *Id.* at 157 (holding that a lienholder who sought to be paid from the proceeds

of the sale of real property held by the executor of the debtor's estate had no obligation to present a claim against the estate in order to — in the words of syllabus paragraph two of the court's opinion — "share in the fund" generated by the sale of the real property to which the debtor's creditor had attached the lien). *See also In re Jaber*, 406 B.R. 756, 763 (Bankr.N.D.Ohio 2009) (a "lien remains attached to the real property until it is satisfied or released"); *Arena Produce Co. v. McMillan*, 27 Ohio App.3d 384, 385 (10th Dist.) ("Her allegation, that she presently owns the property, does not protect her against foreclosure of the property by plaintiff, since the judgment liens existed on the property at the time that she deeded the property. The fact that she does not owe plaintiff money is also irrelevant, as the judgments are liens against the property only rather than being a charge against her").

{¶45} Even if one were to accept Judge King's apparent view that Weese's judgment that he filed as a lien in Guernsey County before Charles Dalton's death is (or should have been) a claim against Charles's estate rather than a claim against the real property that Christina Dalton inherited, R.C. 2117.10 tell us this: "The failure of the holder of a valid lien upon any of the assets of an estate to present the lienholder's claim upon the indebtedness secured by the lien, as provided in this chapter [i.e., as provided in the provision in R.C. 2117.06 on which Judge King relies] shall not affect the lien if the same is evidenced by a document admitted to public record." See also *Thevenin v. Day-Air Credit Union, Inc.*, 2025-Ohio-1488, ¶ 20 (2d Dist.) ("R.C. 2117.10 provides an exception to R.C. 2117.06's presentment requirement . . . and serves to preserve valid liens – those evidenced by public record . . . – without regard to whether they are timely presented") (citation and quotations omitted).

**{¶46}** Given that Weese's certificate of judgment against Charles from Coshocton County was filed in the office of the county recorder in Guernsey County more than a year before Charles died, R.C. 2117.10 appears to indicate that Weese's failure to seek to enforce his judgment through a probate-court proceeding does not — according to that statute — "affect the lien" that he filed as a public record before Charles's death.

**{¶47}** In short, notable statutory authority and various court decisions lead us to question Judge King's apparent view about Weese having lost his opportunity to foreclose on the Dalton lien. If the trial court is asked by the parties to address that issue in the first instance, the trial court should at least be aware that Judge King's view is not the only conceivable perspective on the question.

**{¶48}** In any event, we readily conclude that on the issue in fact addressed by the trial court — which focused on the interplay between Weese's foreclosure action and the statutory homestead exemption — the trial court mistakenly concluded that the homestead exemption is a bar to Weese's effort to press ahead with the foreclosure case now. Whether some other legal barrier — be it R.C. 2117.06 or something else — stands in the way of Weese or other Dalton creditors is perhaps a question for another day.

## The Current Status of Larry Lang's Lien is Not at Issue in this Appeal

**{¶49}** In his final assignment of error, Weese argues that the trial court should have invoked the claim-preclusion doctrine as a bar to Larry Lang's judgment lien because Lang did not appeal — in Lang's foreclosure suit against Charles — a 2019 decision by the court in Guernsey County finding that the homestead exemption prevented Lang from foreclosing on Charles's home then. Weese seems to be arguing

that Lang's failure to appeal from that trial-court ruling bars Lang from ever again seeking to enforce his lien.

{¶50} Notably, the trial court in the judgment at issue in this appeal said nothing about Lang's lien, about its enforceability, or about whose lien — Lang's or Weese's — would take priority if the Dalton property were sold to satisfy one or both of those liens. Whether Lang can enforce his lien in the future is not an issue properly before us in this appeal. *See Lycan v. Cleveland*, 2016-Ohio-422, ¶ 21 ("an appellate court limits its review to issues actually decided by the trial court in its judgment").

{¶51} We decline to address Weese's fourth assignment of error.

{¶52} For the reasons explained above, the judgment of the Court of Common Pleas of Guernsey County is affirmed in part and reversed in part, and the case is remanded to the trial court for further proceedings there. Costs are to be paid by Appellant William Weese.

By: Gormley, J.;

Hoffman, P.J. concurs in the opinion and concurs separately, and

King, J. concurs separately.

*Hoffman, P.J., concurring*

{¶53} I concur generally in the majority's analysis and fully concur in its disposition of Appellant's assignments of error.

{¶54} I write separately only to note I am not yet persuaded, as is the majority, "A trial court that issues a bare-bones default-judgment entry that does not mention the factual allegations raised in the complaint, though, cannot be presumed to have

addressed the merits of the plaintiff's claims."  (Majority Opinion at ¶ 22.)  A failure to file an answer to a complaint results in the factual allegations therein to be admitted.  As noted by the majority, even in default, a trial court is required [and I presume did in the absence of evidence to the contrary] to consider the issues and therefore render a determination on the merits.  (Majority Opinion at ¶ 21.)

{¶55} Furthermore, unlike the majority, I would not be hesitant, even if the Coshocton default judgment entry had failed to include the words "intentional fraud" or "bad faith", let alone crossed them out, to find the Coshocton judgment had preclusive effect on Appellant's fraud claim.  I do so because the amount of the judgment awarded therein, nearly $88,000.00, reflects the amount of damages claimed in Appellant's breach of contract claim.  The failure to award any damages in excess thereof clearly indicated the trial court determined Appellant's punitive damages and request for attorney fees to be without merit.

*King, J. concurs separately,*

{¶56} I join much of Judge Gormley's well-reasoned opinion for the court. Where I depart with the opinion is regarding what should occur on remand. The majority opinion concludes that Weese should be permitted to pursue the foreclosure. In my view, the trial court should first consider whether the failure to present a claim to the estate now prevents a foreclosure.

{¶57} In the prior case, *Weese v. Dalton*, 2023-Ohio-3905 (5th Dist.), this court reviewed several legal issues related to foreclosure, the homestead exemption, and the doctrine of lis pendens. The core issue in the prior case involved a different creditor who

instituted a foreclosure proceeding that was never completed and failed to address Weese, who was also a judgment creditor. In my view, the disposition of that prior case naturally brings us to the conclusion Judge Gormley reaches for the court.

**{¶58}** But a related issue that swirled around our prior review and was never fully addressed is what impact, if any, did the death of Dalton have on this case. In the prior matter, we observed that Weese had attempted to include the Estate of Dalton as a party. As it turned out, no estate was opened. Despite that, as part of her argument, appellee argued Dalton's death effectively terminated the lien. In response, we cited to a Twelfth District case, which in turn cited to a Civil War era case from the Supreme Court holding that an "'heir takes the land subject to the payment of the ancestor's debts.'" *Wead v. Lutz*, 2005-Ohio-2921, ¶ 26 (12th Dist.), quoting *Gill v. Pinney's Administrator,* 12 Ohio St. 38, 46 (1861). For reasons below, I think R.C. 2117.06 (presentation and allowance of creditor's claims) provides the rule we must apply.

**{¶59}** So what impact, if any, did the death of the judgment debtor have on this case? The first principle we must consider is found in R.C. 2105.06 (statute of descent and distribution), which provides when a person dies intestate, real property "shall descend and pass in parcenary." It appears this language has been present in the laws of the State of Ohio for some time, although it does not always seem that courts give it its proper effect.

**{¶60}** Under this statute, the heirs do indeed take an interest in real property, and it is correct to say that the heirs take the ancestor's interest as parceners. *See Kirshner v. Fannie Mae*, 2012-Ohio-286, ¶ 15 (6th Dist.). But that right is not unqualified; the estate maintains an interest insofar as it may need to pay debts by selling the real property. *Id.*

I believe the Sixth District also correctly observed that the lienholders, along with the parceners, have an interest in the real property, and that prior to any sale by the administrator, they must receive notice. *Id.* What the Sixth District did not address is how that rule interplays with R.C. 2117.06.

**{¶61}** R.C. 2117.06(A) sets forth the general rule on debts owed by the decedent: "All creditors having claims against an estate, including claims arising out of contract, out of tort, on cognovit notes, or on judgments, whether due or not due, secured or unsecured, liquidated or unliquidated, shall present their claims in one of the following manners: . . ." In section (C), the General Assembly provided for what must happen if a claim is not timely presented:

> Except as provided in section 2117.061 of the Revised Code, a claim that is not presented within six months after the death of the decedent shall be forever barred as to all parties, including, but not limited to, devisees, legatees, and distributees. No payment shall be made on the claim and no action shall be maintained on the claim, except as otherwise provided in sections 2117.37 to 2117.42 of the Revised Code with reference to contingent claims.

**{¶62}** An apparent problem emerges at this point, what happens to a creditor's claim if an estate is not opened within six months, which was the case here. The Supreme Court answered this question thus: "Where one has a claim against an estate, it is incumbent upon him, if no administrator has been appointed, to procure the appointment

of an administrator against whom he can proceed." *Wrinkle v. Trabert*, 174 Ohio St. 233 (1963), paragraph two of the syllabus. *See also* R.C. 2113.06(C).

**{¶63}** Later, the Supreme Court explicitly stated the consequences to a creditor: "If a creditor fails through indifference, carelessness, delay, or lack of diligence to identify the administrator or executor, or to procure the appointment of one so that a claim can be presented, the law should not come to the creditor's aid." *Wilson v. Lawrence*, 2017-Ohio-1410, ¶ 17. The Supreme Court explained the policy behind R.C. 2117.06: "the requirements of R.C. 2117.06 are not arbitrary ones that elevate form over substance. Rather, they protect the vital interests of the estate and its beneficiaries, as well as the estate's creditors, by ensuring the orderly, efficient, and legally proper administration of the estate by 'a probate fiduciary, an officer of the Probate Court.'" (Citation omitted.) *Id.* at ¶ 15. The following year, the Supreme Court followed *Wilson* in *Embassy Healthcare v. Bell*, 2018-Ohio-4912, in barring a claim for unpaid necessaries not timely made to the estate.

**{¶64}** The upshot of these cases is clear. If a creditor has any "right in action against the decedent," then it must bring a claim to the estate or open an estate if one is not opened. *Id.* at ¶ 32, citing *Pierce v. Johnson*, 136 Ohio St. 95, 99 (1939). In the matter before us, Weese never sought to open an estate and thus the six month-claim period ran.

**{¶65}** Applying the statute this way is supported by other evidence. In *Ambrose v. Byrne*, 61 Ohio St. 146, 156-157 (1899), the Supreme Court held the following:

The death of the debtor stops ordinary process, and administration becomes the appropriate proceeding for the payment of his debts. And, though there may be cases where judgment creditors who obtained a levy on the land of the debtor before his death have been allowed to proceed thereafter to sale and confirmation, yet that is an extraordinary remedy, which may complicate administration and prejudice the rights of the heir or devisee.

{¶66} In *Ambrose*, the Supreme Court read the statutes involving estate administration and liens from judgments in pari materia. *Id.* at 156. The Court thus held (*Id.* at 157):

The personal estate is nevertheless the primary fund for the satisfaction of liens, as well as other debts of the deceased; the title of the personal representative to the assets, whenever appointed, relates back to the time of the death, and in contemplation of law the estate is in process of administration from that time; the real estate, so far as may be necessary to pay any lien upon it, or other debt, becomes assets in his hands, and, the proper and usual method of subjecting it to the payment of the liens is by a proceeding of the personal representative for that purpose.

{¶67} Thus, *Ambrose* tells us that a judgment debtor generally should not be permitted to force a sale of real property outside of the estate because it could "complicate

administration and prejudice the rights of the heir or devise." *Id.* But this does not leave the judgment creditor without recourse; the General Assembly provided that a lienholder would still be paid from any proceeds, according to the judgment creditor's relative priority. *Id.*

**{¶68}** *Ambrose* stands for the proposition that a court should not usually permit a judgment creditor to proceed to sale and confirmation against a deceased judgment debtor.[1]  If we follow the analytic process laid out in *Ambrose*, we should read R.C. Ch. 2117 in pari materia with R.C. Ch. 2923. Thus, it appears a judgment debtor that fails to timely bring a claim against the estate, will lose the right to execute against the lien absent a showing of extraordinary circumstances.

**{¶69}** This conclusion is further supported by the fact that foreclosure proceedings are quasi-in rem. *Huntington Mortgage Co. v. Shanker*, 92 Ohio App. 3d 144, 153 (8th Dist. 1993); *State ex rel. Baldine v. Davis*, 1 Ohio App. 2d 117, 120 (7th  Dist. 1964); *see also Moore v. Starks*, 1 Ohio St. 369, 373-374 (1853) (holding that foreclosure proceeds both in rem and in personam).

**{¶70}** Precedent indicates that a judgment debtor must be joined in a foreclosure action to allow the debtor to contest the debt. Upon the death of a judgment debtor, only the decedent's personal representative, i.e., the administrator of the estate, can stand in the shoes of the judgment debtor. Thus, it would seem even in an extraordinary case where a foreclosure on a certificate of judgment can proceed against a decedent's real

---

[1] This court has previously allowed enforcement of a foreclosure due to a mortgage to proceed without the decedent's personal representative. *Bank of New York Mellon Trust. Co, N.A. v. Loudermilk*, 2013-Ohio-2296, ¶ 51 (collecting cases). But the issue before us does not arise from a mortgage and thus is controlled by the precedent of our superior court.

property, the estate is a necessary party for such a proceeding. And, as set forth above, the judgment creditor (Weese) failed to open an estate and preserve his ability to foreclose on his lien. Consequently, Weese was "forever barred" from seeking to execute against his lien.

{¶71} Because this issue was not briefed below, I would remand to the trial court with instructions to consider in the first instance the impact of how *Ambrose* and R.C. 2117.06 operate to preclude Weese from proceeding to sale and confirmation of the property. In any event, I join the majority opinion because no legal principle prohibits this legal issue from being raised on remand.